FILED

2008 DEC 16 PM 2:08

Brian P. McGilvray, Esq., SBN 191907
LAW OFFICES OF BRIAN P. McGILVRAY
16633 Ventura Boulevard, Suite 800
Encino, California 91436-1865
Telephone: (818) 461-9314
Facsimile: (818) 461-9316
E-mail: bmcgilvray@mcgilvraylaw.com

Jeremy M. Golan, Esq., SBN 216271
GOLAN LAW, P.C.
2566 Overland Ave., Suite 730
Los Angeles, California 90064
Telephone: (310) 558-0424
Facsimile: (310) 558-1977
E-mail: jgolan@golanlaw.com

Attorneys for Z Security Group Inc., a California
Corporation dba The Z Group

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Z SECURITY GROUP INC., a California Corporation dba THE Z GROUP,

Plaintiff,

vs.

DOORLAND 2000 INC., an Ontario Corporation; LEGACY DOOR (2005) INC.; SERGIO LANCIA, an individual; and DOES 1 through 10 inclusive,

Defendants.

CASE NO: CV08-08281

COMPLAINT FOR DAMAGES FOR:

1. BREACH OF WRITTEN CONTRACT
2. VIOLATION OF INDEPENDENT WHOLESALE SALES REPRESENTATIVES CONTRACTUAL RELATIONS ACT [CA CIVIL CODE §§ 1738.10 et. seq.]
3. ACCOUNTING
4. FRAUD
5. UNFAIR BUSINESS PRACTICES

1
COMPLAINT

COMES NOW PLAINTIFF Z SECURITY GROUP INC., a California Corporation dba THE Z GROUP ("PLAINTIFF"), who, through its attorneys of record, alleges as follows:

## GENERAL ALLEGATIONS

1. PLAINTIFF Z SECURITY GROUP INC. is a corporation organized and validly existing under the laws of the State of California, with its principal place of business located at 7921 Canoga Avenue, Suite J, Canoga Park, County of Los Angeles, State of California 91304.

2. PLAINTIFF is informed and believes, and thereon alleges, that Defendant DOORLAND 2000 INC. is a corporation incorporated under the laws of the Province of Ontario, Canada, having its principal place of business in Ontario, Canada.

3. PLAINTIFF is further informed and believes, and thereon alleges, that Defendant LEGACY DOOR (2005) INC. is a wholly-owned division of Defendant DOORLAND 2000 INC., having its principal place of business in Ontario, Canada. For purposes of reference, Defendants DOORLAND 2000 INC. and LEGACY DOOR (2005) INC. shall hereinafter be collectively referred to as "DEFENDANTS."

4. PLAINTIFF is further informed and believes, and thereon alleges, that Defendant SERGIO M. LANCIA is, and at all times relevant hereto was, a resident of Ontario, Canada.

5. The true names, identities and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOES 1 through 20, inclusive, are unknown to PLAINTIFF, who therefore sues said Defendants by such fictitious names. PLAINTIFF will amend this Complaint to show their true names, identities and capacities when the same have been ascertained. PLAINTIFF is informed, believes and thereon alleges that each of the Defendant DOES 1 through 20, inclusive, is responsible in some manner for the

acts, omissions and occurrences hereinafter alleged, and that PLAINTIFF'S damages as herein alleged were proximately caused by each of said Defendants.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. Venue in this District under 28 U.S.C. § 1391(a) is based upon the fact that DEFENDANTS are subject to personal jurisdiction in the State of California under California Civil Code section 1738.14 and substantial performance of the obligations of DEFENDANTS was to occur in this District.

## FACTUAL ALLEGATIONS

8. On or about March 15, 2006, at Canoga Park, California, PLAINTIFF and DEFENDANTS entered into a written Independent Representative Agreement, a copy of which is attached hereto as Exhibit "A" and incorporated herein by reference, making PLAINTIFF a wholesale sales representative of DEFENDANTS (the "Agreement"). The Agreement provides, in pertinent part, that PLAINTIFF shall market, sell and promote DEFENDANTS' products, that PLAINTIFF will be paid a commission equal to five percent (5%) of the sales price of the products sold by PLAINTIFF (except that PLAINTIFF would receive a commission of 3½% for all products sold on the "Wynn Encore" project), and that PLAINTIFF will be paid its commission after DEFENDANTS' have received payment from the customer. The Agreement also provided that PLAINTIFF'S territory for selling DEFENDANTS' products would be Arizona; New Mexico; El Paso, Texas; Southern California (south of and including the counties of Inyo, Kings, San Luis Obispo and Tulare); and Southern Nevada (including the counties of Clark, Esmeralda, Lincoln, Mineral and Nye). Beginning in late 2006, PLAINTIFF began securing orders for DEFENDANTS' products throughout the territory and in January 2007, PLAINTIFF began receiving commissions from DEFENDANTS.

9. On or about April 3, 2007, PLAINTIFF secured an order for DEFENDANTS' products on the Wynn Encore project. The total amount of the initial order was $6,930,816.00. As such, PLAINTIFF'S minimum commission from this order would be $242,578.56, calculated at the rate of 3½% of the initial order amount. PLAINTIFF is informed and believes that substantial change orders have occurred on this project, potentially resulting in a substantially higher amount of commission due PLAINTIFF for this sale. However, despite PLAINTFF'S demands for payment of its commission, PLAINTIFF has only been paid $28,476.63 of the commission PLAINTIFF is owed by DEFENDANTS. The balance of the commission, in the minimum amount of $214,101.93, remains unpaid, despite the fact that PLAINTIFF is informed and believes that DEFENDANTS have been paid in full by the customer on this order.

10. In addition to the commission owed PLAINTIFF from the Wynn Encore project, PLAINTIFF believes that additional commissions may be owed them from orders placed with DEFENDANTS as a result of PLAINTIFF'S sales efforts in California, but that have not been credited to PLAINTIFF. PLAINTIFF has requested an accounting of its entire account with DEFENDANTS, but DEFENDANTS have refused to provide the requested accounting.

11. On or about January 11, 2008, DEFENDANTS sent a written notice to PLAINTIFF notifying PLAINTIFF that DEFENDANTS were terminating the Agreement, with the termination to be effective at 12:01 a.m. on February 12, 2008.

## FIRST CLAIM FOR RELIEF FOR
## BREACH OF WRITTEN CONTRACT AGAINST DEFENDANT
## DOORLAND 2000 INC. AND DOES 1 THROUGH 20

12. PLAINTIFF repeats and realleges Paragraphs 1 through 11, inclusive, and incorporates the same as though set forth herein in full.

13. PLAINTIFF has performed all conditions, covenants, and promises

4
COMPLAINT

required on its part to be performed in accordance with the terms and conditions of the Agreement, except those that were excused or prevented from being performed.

14. DEFENDANTS have breached the Agreement by failing to pay the commissions due PLAINTIFF in full, as demanded.

15. As a result of DEFENDANTS' breach of the Agreement, PLAINTIFF has been damaged in excess of the sum of Two Hundred Fourteen Thousand One Hundred One Dollars and Ninety-three Cents ($214,101.93).

## SECOND CLAIM FOR RELIEF FOR VIOLATION OF INDEPENDENT WHOLESALE SALES REPRESENTATIVES CONTRACTUAL RELATIONS ACT AGAINST DEFENDANT DOORLAND 2000 INC. AND DOES 1 THROUGH 20
### [CA CIVIL CODE §§ 1738.10 et. seq.]

16. PLAINTIFF repeats and realleges Paragraphs 1 through 15, inclusive, and incorporates the same as though set forth herein in full.

17. PLAINTIFF is engaged in the business of soliciting wholesale orders for the purchase by building contractors of products manufactured, jobbed, or distributed by others. PLAINTIFF is compensated by the manufacturer, jobber, or distributor by the payment of commissions.

18. DEFENDANTS are engaged in the business of manufacturing doors and door frames intended for resale to, or use by consumers, including California consumers.

19. On or about March 15, 2006, at Canoga Park, California, PLAINTIFF and DEFENDANTS entered into the Independent Representative Agreement referenced above, making PLAINTIFF a wholesale sales representative of DEFENDANTS.

20. PLAINTIFF devoted substantial time and effort to promoting DEFENDANTS' products, and forwarded known orders to DEFENDANTS aggregating approximately $7,418,082.20 for the period of March 15, 2006

through February 12, 2008. This aggregate amount of known orders included approximately $329,254.50 in orders to be delivered to contractors in California. As part of the overall sales orders obtained by PLAINTIFF, on or about April 3, 2007, PLAINTIFF submitted Sales Order No. 1763 to DEFENDANTS, with an initial total order amount of $6,930,816.00 for the Wynn Encore project. In addition, PLAINTIFF is informed and believes that substantial change orders have occurred on this project, resulting in a substantially higher final order amount.

21. On or about November, 2007, DEFENDANTS forwarded PLAINTIFF commission checks totaling $28,476.63, covering partial commissions from Sales Order No. 1763. PLAINTIFF is informed and believes that DEFENDANTS have received full payment from the customer on Sales Order No. 1763, but, despite repeated demands for payment from PLAINTIFF, DEFENDANTS have willfully failed and refused to pay PLAINTIFF the remaining commission due from this sale, and DEFENDANTS have failed to provide any accounting of the total sales made by PLAINTIFF on this project.

22. Because of the acts of DEFENDANTS as described above, PLAINTIFF has sustained actual damages in the minimum sum of $214,101.93.

23. The acts of DEFENDANTS as stated herein constitute a willful violation of the Independent Wholesale Sales Representatives Contractual Relations Act (California Civil Code section 1738.10 et. seq.) (the "Act") and PLAINTIFF is entitled under California Civil Code section 1738.15 to damages from DEFENDANTS amounting to treble the damages proved at trial.

24. Additionally, California Civil Code section 1738.16 provides that the prevailing party shall be entitled to an award of reasonable attorney's fees and costs, in addition to any other recovery, in a civil action brought by the sales representative pursuant to the Act.

///

///

## THIRD CLAIM FOR RELIEF FOR
## AN ACCOUNTING AGAINST DEFENDANT DOORLAND 2000 INC. AND DOES 1 THROUGH 20

25. PLAINTIFF repeats and realleges Paragraphs 1 through 24, inclusive, and incorporates the same as though set forth herein in full.

26. From and after March 15, 2006, PLAINTIFF secured orders for the sale of DEFENDANTS' products. Pursuant to the terms of the Agreement, PLAINTIFF is entitled to receive a commission from DEFENDANTS for all sales of DEFENDANTS' products sold by PLAINTIFF.

27. PLAINTIFF is unable to determine the exact amount of the commissions that it is owed by DEFENDANTS without a complete accounting of PLAINTIFF'S account with DEFENDANTS. PLANTIFF has requested that DEFENDANTS provide such an accounting, but DEFENDANTS have refused PLAINTIFF'S requests.

## FOURTH CLAIM FOR RELIEF FOR
## FRAUD AGAINST ALL DEFENDANTS

28. PLAINTIFF repeats and realleges Paragraphs 1 through 27, inclusive, and incorporates the same as though set forth herein in full.

29. On or about March 15, 2006, PLAINTIFF and DEFENDANTS entered into the Agreement. The Agreement entitled PLAINTIFF to commissions based on PLAINTIFF'S sales of DEFENDANTS' products. Shortly before the execution of the Agreement, Sergio Lancia, President of DEFENDANT, represented to Dennis Zanrosso, president of PLAINTIFF, that DEFENDANT would pay commissions to PLAINTIFF based on sales PLAINTIFF obtained.

30. Mr. Lancia knew these representations were false at the time he made the misrepresentations to PLAINTIFF. The truth was Mr. Lancia had no intention of paying all commissions owed to PLAINTIFF. Mr. Lancia made these misrepresentations to PLAINTIFF with the intent that PLAINTIFF would believe

and rely upon them in entering into the Agreement. PLAINTIFF, in reliance upon Mr. Lancia's misrepresentations, executed the Agreement. At the time PLAINTIFF executed the Agreement, PLAINTIFF did not know that Mr. Lancia's representations were false, but believed said representations to be true. PLAINTIFF's reliance upon the misrepresentations was reasonable because Mr. Lancia was believed be a reputable business executive and was involved in the construction of many prominent construction projects. PLAINTIFF had no reason at that time to doubt Mr. Lancia's integrity.

31. The Agreement was subsequently exposed as a ploy to induce PLAINTIFF to obtain orders and then avoid paying commissions on such orders by purporting to cancel the Agreement. On or about April 3, 2007, PLAINTIFF secured an order for DEFENDANTS' products on the Wynn Encore project. The total amount of the initial order was $6,930,816.00. As such, PLAINTIFF'S minimum commission from this order would be $242,578.56, calculated at the rate of 3½% of the initial order amount. Then, effective February 12, 2008, DEFENDANTS sent a notice terminating the Agreement. Shortly thereafter, DEFENDANT received payment for the Wynn Encore orders. DEFENDANTS subsequently asserted the self-serving claim that PLAINTIFF is not due all commissions on the Wynn Encore order because the Agreement was terminated prior to receipt of payment. DEFENDANTS' scheme to not pay commissions was exposed as it became evident DEFENDANTS lacked any intent to pay the full amount of commissions on PLAINTIFF'S sale. Rather, they elected to purport to terminate the Agreement in a misguided attempt to avoid paying commissions on sales obtained by PLAINTIFF.

32. As a direct a direct and proximate result of Mr. Lancia's intentional misrepresentations, PLAINTIFF has suffered damages in the minimum amount $214,101.93 (i.e., $242,578.56 - $28,476.63 =$214,101.93), together with interest thereon at the maximum rate permitted by law.

33. DEFENDANTS' misconduct as set forth above was fraudulent, oppressive and malicious in that it was intended to deceive PLAINTIFF into executing and performing its obligations under the Agreement in the false belief that Mr. Lancia's representations, as set forth above, would be fulfilled. DEFENDANTS' misconduct violates California Civil Code Section 3294 and justifies an award of punitive damages as against the DEFENDANTS in an amount to be determined at the time of trial.

## FIFTH CLAIM FOR RELIEF FOR
## UNFAIR BUSINESS PRACTICES AGAINST ALL DEFENDANTS

34. PLAINTIFF repeats and realleges Paragraphs 1 through 33, inclusive, and incorporates the same as though set forth herein in full.

35. DEFENDANTS failed to pay due and owing commissions and made material misrepresentations to PLAINTIFF in inducing PLAINTIFF to enter in the Agreement on the premise that commissions would be paid for orders obtained.

36. DEFENDANTS' actions are unlawful, unfair, deceptive, unscrupulous, unethical, wrongful acts and business practices violating California Business and Profession Code Sections 17200 et. seq. These acts directly harm PLAINTIFF.

37. DEFENDANTS should be ordered to disgorge and restore to PLAINTIFF all benefits and unjust enrichment obtained by them as a result of their unfair competition and business practices.

**WHEREFORE**, PLAINTIFF prays for judgment against DEFENDANTS, and each of them, as follows:

1. For damages in an amount to be proved at trial, but in no event less than the minimum sum of $214,101.93, and that sum be trebled;

2. For turnover of unjust enrichment;

3. For an accounting of PLAINTIFF'S account with DEFENDANTS;

4. For interest at the legal rate from and after the date on which

DEFENDANTS received payment for the products sold by PLAINTIFF as alleged herein;

    5. For reasonable attorney's fees;

    6. For costs of suit incurred herein; and

    7. For such further relief as this Court may deem just and proper.

DATED: December 12, 2008

Respectfully submitted,

LAW OFFICES OF BRIAN P. McGILVRAY,
A Professional Corporation

By: _____
Brian P. McGilvray, Esq.
Attorneys for Z Security Group Inc., a
California Corporation dba The Z Group

## JURY DEMAND

Pursuant to F.R.C.P. 38(b) Plaintiff Z Security Group Inc., a California Corporation dba The Z Group, demands a jury trial on all claims triable to a jury.

LAW OFFICES OF BRIAN P. McGILVRAY,
A Professional Corporation

By: _____
Brian P. McGilvray, Esq.
Attorneys for Z Security Group Inc., a
California Corporation dba The Z Group

**EXHIBIT "A"**

## INDEPENDENT REPRESENTATIVE AGREEMENT

This Independent Representative Agreement (this "Agreement") dated March 15 th as of 2006, (the "Effective Date"), is entered into by Legacy Door (2005) Inc. a division of Doorland Inc, an Ontario Corporation having its principal place of business located at 221 Creditview Road, Woodbridge, ON L4H 9T1 (The "Company"), and The Z Group having its principal place of business located at 7921 Canoga Ave, Suite J, Canoga Park, CA 91304 (The "Representative").

## WITNESSETH

WHEREAS, the Company wishes to engage the Representative as the independent representative to market, sell and promote certain of the Company's products in accordance with and subject to the terms and conditions set forth in this Agreement; and

WHEREAS, the Representative is willing to market, sell and promote such products in accordance with and subject to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual promises herein made, and in consideration of the representations, warranties, and covenants herein contained, the parties agree as follows:

I. PRODUCTS. A list of the Company's products that the Representative shall market, sell and promote (the "Products") is set forth on Exhibit A hereto.

II. PRICES. The sale prices, at which the Representative shall market, sell and promote the Products, shall be at the prices posted and in effect from the Legacy Doors (2005) Inc. Corporate List Pricing Pages. All sales of products below Dealer Net Price, by the Representative, must be pre-authorized in writing by an authorized executive of the Company.

III. USE OF THE COMPANY NAME. The Representative shall have no right to use the Company name in such a way as to make the Company liable for any costs or expenses, including, but not limited to, State taxes, Federal taxes, and contributions.

IV. SALES POLICY AND OPERATING REGULATIONS. The Representative agrees to abide by, and comply with, all sales policies and operating regulations of the Company, and will not obligate or contact on behalf of the Company without first having received written authorization from an executive of the Company.

V. TERRITORY. The Representative's territory for marketing, selling and promoting the Products is described on Exhibit B hereto.

2

VI.     COMPENSATION. As sole compensation for the Representative's services to the Company, the Company agrees to pay the Representative a commission equal to 5% of the sale price of Products sold by the Representative, unless agreed to otherwise.

For purposes of calculating the Representative's commission, the "sale price" of a Product is defined as the price paid by the customer for that Product, excluding any and all additional costs and charges, including, without limitation, taxes and packing, shipping, and handling fees. If orders are returned to and accepted by the Company from a customer for credit, deductions in the amount of the commission paid on the order will be deducted from the Representative's commission check for the following month. If the amount of the Representative's commission for such month is insufficient, the Representative shall refund commissions paid on orders returned for credit to the Company within 30 days of the Company's delivery of a written request therefor.

The following provisions apply to all commissions:

A.     The Company will pay the commissions on the sale of a Product only after payment has been received therefore from the customer. Earned commission will be paid on or before the 21st. of each month for payments received from customers in the prior month. Note: Sales Tax and Freight Charges are non-commissionable.

B.     In the event of the sale of Products (subject to Section II hereof) at a sales price below the most recent agreed upon multiplier, the Company shall have the right to alter the Representative's standard commission rate in its sole discretion.

VII.     CREDIT POLICY. The Company reserves the right to reject any and all orders because of the customer's unsatisfactory credit rating. Upon sales to new customers, the Representative may be required to obtain from the customer and provide to the Company customer credit information with orders. The Representative shall assist the Company in the collection of past due amounts owed to the Company by customers located in the Representative's territory.

VIII.     TERM. The Agreement shall be effective as of the Effective Date and continued until either party give the other party written notice of termination. Upon delivery of such notice, the Agreement shall be terminated 30 days from date of written notice and no further obligation or liability between the parties shall arise hereunder; provided, however, that the Company shall pay the Representative all commission payable on Products sold prior to the date of termination. A maximum 90 day termination term will apply after one year of Representation. The 90 day termination term is subject for review after completion of one year of Representation. All changes will be documented in writing, and approved by both The Company and The Representative.

3

IX. INDEMNIFICATION. The Company hereby agrees to indemnify and hold the Representative harmless from and against any and all liability, loss, costs, expenses or damages (collectively, "Damages"), however caused, by reason of any defective Products or any act or omission by the Company unless such Damages result from the Representative's own misconduct or negligence.

X. INDEPENDENT CONTRACTOR STATUS. The Representative shall act at all times as an independent contractor hereunder. The Representative acknowledges that the Representative is not an employee or agent of the Company and has no power or authority to neither bind the Company in any respect, nor shall the Company be responsible for any of his or her actions. Subject to Section IV hereof, the Representative is free to pursue whatever means he or she chooses in marketing, promoting and selling the Products and otherwise fulfilling his or her duties hereunder and the amount of time and effort spent in those pursuits shall be determined solely by him or her. Notwithstanding the foregoing, the Representative shall not damage or impair the reputation, business, and/or property of the Company. No title or other designation granted to the Agent shall enlarge or increase his authority to act for the Company.

XI. COLLECTION OF ACCOUNTS. The Representative has no authority to collect accounts or retain funds payable to the Company and the Representative acknowledges that all payments from customers (whether made by check, sight draft, letter of credit or otherwise), shall be made payable to the Company.

XII. EXCLUSIVE REPRESENTATION. During the term of this Agreement, the Representative shall not market, promote or sell any products similar to the Products. Authorized products shall include Lambton Doors and any other door products which are complimentary to The Representative's product lines approved by The Company.

XIII. **CHOICE OF LAW. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE PROVIDENCE OF ONTARIO WITHOUT GIVING EFFECT TO ANY CHOICE OR CONFLICT OF LAW PROVISION OR RULE THAT WOULD CAUSE THE APPLICATION OF THE LAWS OF ANY JURISDICTION OTHER THAN THE STATE OF CALIFORNIA.**

XIV. NOTICES. Any notice required or permitted hereunder shall be in writing and shall be deemed duly given upon personal delivery or upon deposit in the mail, as first class, certified mail, with postage and fees prepaid, addressed, if to the Company, to the address set forth for the Company in the opening paragraph hereof, and, if to the Representative, to the address set forth below the Representative's signature below or to such other address as either party may specify by notice given in accordance with this Section XV.

4

XV. MISCELLANEOUS. This Agreement constitutes the entire understanding and agreement between the parties with respect to the subject matter hereof and supersedes any and all prior or contemporaneous oral or written communications

XVI. With respect to such subject matter. This Agreement shall not be modified, amended or in any way altered except by an instrument in writing signed by all of the parties hereto. This Agreement may be executed in counterparts, which together shall constitute one and the same instrument. In the event that a court of competent jurisdiction found any provision of this Agreement unenforceable, such provision shall be struck herefrom and the rest of this Agreement shall be enforced according to its terms. This Agreement shall be binding upon and inure to the benefit of the parties hereto and there respective successors and permitted assigns. No party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other parties.

IN WITNESS WEREOF, the parties have executed this Agreement effective as of the date first above written.

Legacy Doors (2005) Inc.

By: _____
Name: Sergio M. Lancia
Title: President

Representative (The Representative)

By: _____
Name:       Dennis Zanrosso
Title:      President
Co. Name:   The Z Group
Address:    7921 Canoga Ave. Suite J
            Canoga Park, CA 91304

6

**EXHIBIT B**

**DESCRIPTION OF TERRITORY:**

1. Arizona
2. New Mexico
3. El Paso, Texas
4. Southern California (south of and including the counties of Inyo, Kings, San Luis Obispo and Tulare)
5. Southern Nevada (including the counties of Clark, Esmeralda, Lincoln, Mineral and Nye)

Representative's Signature _____
Date: March 15, 2006

<u>EXHIBIT C</u>

## <u>WYNN ENCORE CONTRACT</u>

Parties here to agree that the commission for the Wynn Encore will be changed from 5% to 3.5% of the sale price. All other terms and conditions to remain the same.

Furthermore, should the Representatives sell Legacy Product of $2,000,000.00 and over, (not including Wynn Tower) during the year June 1st, 2007 to May 31st, 2008, the Company agrees to pay a further 1.5% commission on the Wynn Encore, plus the 5% standard commission in the $2,000,000.00 of new sales.

Legacy Doors (2005) Inc.

By: _____
Name: Sergio M. Lancia
Title: President

Representative (The Representative)

By: _____
Name: DENNIS ZANROSSO
Title: PRESIDENT
Co. Name: THE Z GROUP
Address: 7921 CANOGA AVE, SUITE J
CANOGA PARK, CA 91304